IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:10-cr-00117-1 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| ) | |
| JAMIE FRENCH ) | |

### MEMORANDUM OPINION

Pending before the Court is Defendant's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and For Appointment of Counsel" (Doc. No. 292, "Motion"). Via the Motion, Defendant seeks a reduction of his 168-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 296, "Response"), arguing that the Motion should be denied because Defendant has not established extraordinary and compelling reasons for his release and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

---

[1] Motions like the instant Motion are generally known as ones for "compassionate release," and Defendant's requested relief appropriately can be referred to and conceived of as "compassionate release" or "sentence modification" (or "sentence reduction"). *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

BACKGROUND

On May 5, 2010, Defendant was charged together with four co-Defendants in a single-count indictment with conspiracy to possess with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. § 846. (Doc. No. 60). On September 30, 2011, Defendant pled guilty to the sole count of the indictment. (Doc. No. 209). On January 20, 2012, United States District Judge Todd Campbell sentenced Defendant to serve 188 months of imprisonment followed by 4 years of supervised release. (Doc. No. 230).[2] Defendant appealed, and the Sixth Circuit affirmed his sentence on November 19, 2012. *See United States v. French*, 505 F. App'x 478 (6th Cir. 2012). In 2015, Defendant filed an unopposed motion to reduce his sentence based on an amendment to the United States Sentencing Guidelines as they applied to drug trafficking offenses. (Doc. No. 254). Judge Campbell granted the motion and reduced Defendant's sentence to 168 months' imprisonment. (Doc. No. 258). Defendant has been serving his sentence at USP Leavenworth. According to BOP, Defendant's release date is October 16, 2022. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 1, 2021).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for

---

[2] The undersigned took no part in the plea or sentencing of Defendant and indeed was at no point assigned to Defendant's case until the instant Motion was filed.

[3] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE

compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and

---

RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

two] is warranted in whole or in part under the particular circumstances of the case."
*Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

---

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

18 U.S.C. § 3553(a).

## ANALYSIS

APPOINTMENT OF COUNSEL

Via the Motion, Defendant seeks appointment of counsel. The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). However, the constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). Whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *See United States v. Stephens*, 2020 WL 3250226 at *2 (E.D. Mich. June 16, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Defendant fails to present any unique circumstances justifying appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that defendant appeared able to adequately present his claim). Defendant has failed to articulate why he is unable to present his request for compassionate release pro se. Moreover, the Court believes that it is able

to fairly adjudicate such motions even though one side (and not the other) in unrepresented by counsel defendant. That is not to say that learned counsel cannot contribute something, especially something regarding nuances, to a defendant's cause on these motions. But it is to say that typically, the degree of substantive merit of these very fact-based motions is evident to the Court even without learned counsel advocating the merits on the defendant's behalf. Accordingly, Defendant's request for counsel is DENIED and the Court will proceed to the merits of the Motion.

COMPASSIONATE RELEASE REQUEST

    A. <u>Extraordinary and Compelling Reasons</u>

    i. The Parties' Positions

In Defendant's Motion (filed February 9, 2021), he claimed that he was currently suffering from COVID-19 and reported "serious difficulty breathing; severe headaches; pain in his kidneys; shortness of breath," and that he "had never felt sicker in his life." (Doc. No. 292 at 2). He requested early release based on the alleged failure of BOP to care for him and his risk of reinfection if he were to remain incarcerated. (*Id*. at 2-3).

In its Response, the Government argues that Defendant has not proffered any extraordinary and compelling reasons that warrant his early release. (Doc. No. 296 at 5). The Government first argues that Defendant's medical records belie his claim that he was suffering from COVID-19 in February when he filed his Motion, wherein he represented to the Court that he had a current COVID-19 infection. (*Id*. (citing Doc. No. 296-2)). The Government points out that Defendant's medical records indicate that Defendant tested positive for COVID-19 in September 2020, and he was closely monitored for a 10-day period following his positive test and exhibited no symptoms. (*Id*. (citing Doc. No. 298-2)). The Government contends that the medical records further demonstrate that Defendant subsequently tested negative twice, once in January and again in

February, presumably at around the time he drafted and mailed his Motion. (*Id.* (citing Doc. No. 298-2 at 33))).

The Government also argues that because Defendant recently recovered from COVID-19 in September 2020, he is not presently at a high risk of infection from the virus, much less severe illness resulting from such an infection. (*Id.* at 6-7). The Government points out that the Centers for Disease Control and Prevention ("CDC") states that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." (*Id.* at 6). The Government maintains that "[g]iven the very low rate of reinfection, it is unsurprising that '[c]ourts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release.'" (*Id.* (quoting *United States v. Risley*, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) (collecting cases))); *see also, e.g., United States v. Hudson*, 2020 WL 7364484, at *3 (E.D. La. Dec. 15, 2020) (denying motion for compassionate release filed by 59-year-old defendant with hypertension who had recovered from COVID-19); *United States v. Horton*, 2020 WL 6135046, at *2 (M.D. Tenn. Oct. 19, 2020) (denying motion for compassionate release filed by defendant with moderate asthma who had recovered from COVID-19).

The Government further argues that even if Defendant were at risk for reinfection, he does not have any documented medical conditions that place him at a substantially increased risk of severe illness from the virus that causes COVID-19, because his medical records indicate that his "only recent medical complaints are knee pain and a couple of slightly elevated blood pressure readings." (Doc. No. 295 at 7). And the Government points out that neither of these medical issues have been identified by the CDC as risk factors for COVID-19. (*Id.* (citing *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Apr. 7, 2021))).

Finally, the Government asserts that Defendant's reasons for release do not rise to the level of extraordinary and compelling reasons because Defendant's "purported fear of reinfection rings especially hollow here where [Defendant] was offered the COVID-19 vaccine in January and refused it." (Doc. No. 296 at 7 (citing Doc. No. 298-2 at 34)).

ii. Analysis

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling[.]'" and is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

First, the Court finds that Defendant's general fear of COVID-19 reinfection is not an extraordinary and compelling reason for compassionate release. The Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Fears of COVID-19 *reinfection* are even less compelling, as the current CDC guidance indicates that cases of reinfection with COVID-19 are "rare." *Reinfection with COVID-19*, Centers for Disease Control, https://perma.cc/2KJJ-G8TK (last accessed Apr. 7, 2021). This has led many courts to find that the (low) risk of reinfection is not an extraordinary and compelling reason warranting release. *See, e.g., United States v. King*, No. 18-20416, 2021 WL 1220864, at *3 (E.D. Mich. Apr. 1, 2021) ("[The] speculative risk of reinfection do[es] not

constitute extraordinary and compelling reasons to grant [defendant] a sentence modification."); *United States v. Jackson*, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021); *United States v. English*, No. 19-20164, 2021 WL 267774, at *2 (E.D. Mich. Jan. 27, 2021). The Court finds that Defendant's fear of a COVID-19 reinfection, without more, does not rise to the level of extraordinary and compelling reasons necessary for this Court to grant compassionate release.[6]

The Government points out that Defendant's medical records reveal a few high blood pressure readings. The Court has reviewed Defendant's medical records, which indeed reveal several high blood pressure readings. (Doc. No. 298-2 at 12). However, his records do not indicate that he has been medically diagnosed with any form of hypertension or that he presently takes any medication for his blood pressure. The CDC states that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Apr. 7, 2021). Thus, even if Defendant was medically diagnosed with hypertension, the CDC indicates that this diagnosis would only *possibly* make him more likely to get severely ill from COVID-19. This Court previously has held that a diagnosis of hypertension (with no other underlying medical conditions) does not constitute extraordinary and compelling reasons for a defendant's early release. *See United States v. Johnson*, No. 3:16-CR-00242, 2020 WL 4753846, at *5 (M.D. Tenn. Aug. 17, 2020), *appeal dismissed*, No. 20-6026, 2020 WL 7213445 (6th Cir. Nov. 12, 2020).

---

[6] The Court's review of Defendant's medical records also reveals that, like the Government stated, Defendant tested positive for COVID-19 on September 8, 2020 and negative on January 30, 2021 and February 12, 2021 (Doc. No. 298-2 at 33). The Court would find it to be very surprising if Defendant again had a second COVID-19 infection in February when he filed his Motion (on February 9, 2021) wherein he indicated that he had a current COVID-19 infection. It would be, to say the least and without gilding the lily, most unfortunate if Defendant were lying to the Court about a COVID-19 infection in a severely misguided attempt to help his chances of being granted compassionate release.

Additionally, numerous other courts have denied a defendant's motion for compassionate release that was based on the medical condition of hypertension combined with (*i.e.*, in the particular context of) the COVID-19 pandemic. *See United States v. Cox*, No. 13-CR-20779-02, 2020 WL 4581692, at *1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, No. CR JKB-04-323, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him form the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons."); *United States v. Chambers*, No. 18-47 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain"). If a diagnosis of hypertension does not constitute extraordinary and compelling reasons, then the Court certainly does not find that a few high blood pressure readings constitute extraordinary and compelling reasons for Defendant's release.

Finally, the Court agrees with the Government that Defendant's refusal of the COVID-19 vaccine substantially undermines his argument that his risk of reinfection constitutes an extraordinary and compelling reason that justifies his release. Courts have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine. *See United States v. Toney*, No. 17-20184, 2021 WL 1175410, at *1 (E.D. Mich. Mar.

29, 2021) ("The Court denies Defendant's motion for compassionate release because his access to the COVID-19 vaccine mitigates any extraordinary and compelling reasons that might otherwise justify release."); *United States v. Wieman*, No. 4:19-CR-40003-06-KES, 2021 WL 425113, at *2 (D.S.D. Feb. 8, 2021) ("[Defendant] was offered a vaccine, but refused. . . . This leads the court to believe that her fears of reinfection are overstated."); *United States v. Vogt*, No. 4:19-CR-40003-05-KES, 2021 WL 364652, at *4 (D.S.D. Feb. 3, 2021) ("Vogt recently tested negative for COVID-19 and refused a vaccine when offered one. . . . . Although the court in no way diminishes Vogt's health concerns, her conditions coupled with the present conditions at FCI Pekin, do not establish extraordinary and compelling reasons justifying her early release."); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. McBride*, No. 519CR00007KDBDCK1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Although Defendant's diabetes could qualify as an extraordinary and compelling reason for granting compassionate release if it substantially diminished his ability to provide self-care against serious injury or death from COVID-19 within the environment of a correctional facility, it does not qualify as such in this instance. Defendant rejected the COVID-19 vaccine."); *United States v. Williams*, No. CR1701279001PHXDLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) ("Defendant's [refusal of the vaccine] is inconsistent with his position that he believes he is at increased risk from the virus.")).

As the undersigned put it in denying a compassionate release motion last month, "the Court agrees with the Government that Defendant's refusal of the COVID-19 vaccine seriously deflates any argument that he had regarding whether the risks posed to him by the COVID-19 virus (in

consideration of his specific medical conditions) amounts to extraordinary and compelling reasons to justify his release." *United States v. Ervin*, No. 3:14-CR-000195-1, 2021 WL 848690, at *4 (M.D. Tenn. Mar. 5, 2021). To be clear, the Court does not purport to lecture Defendant that he should or should not take the vaccine; this is a personal choice for Defendant to make as he sees fit. What the Court is saying, rather, is that when a movant insists that his health and well-being requires that he be (compassionately) released from incarceration to counter the risk of COVID-19, such insistence rings hollow when the movant is unwilling to counter that risk by resorting to something far more ordinary—taking the vaccine—than the extraordinary remedy of compassionate release he seeks. Accordingly, although this Court finds that even without his refusal of the vaccine Defendant's reasons for release were neither extraordinary or compelling, his refusal of a vaccine that could exponentially reduce his risk associated with COVID-19 seals the doom of his argument, which already had been hanging by a proverbial thread.

The Court, in its discretion, finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

<u>B. Section 3553(a) Factors</u>

As just suggested, because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion (Doc. No. 292) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE